IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID U., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 20 C 6514 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff David U. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court affirms the ALJ's decision.

## BACKGROUND

Plaintiff applied for SSI on July 25, 2018, alleging that he has been disabled since October 1, 2017 due to diabetes, kidney disease, hypertension, high cholesterol, and chronic obstructive pulmonary disease ("COPD"). (R. 163, 187). Born in 1959, Plaintiff was 58 years old at the time of the application, making him a person of advanced age

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

(age 55 or older). He subsequently changed categories to a person closely approaching retirement age (age 60 or older). (R. 163); 20 C.F.R. § 416.963(e). Plaintiff graduated from high school and lives with his wife. (R. 37, 188). He spent several years working as a truck driver, but he quit on October 1, 2017 due to his conditions and has not been employed since that date. (R. 39-42, 172, 187-88).

The Social Security Administration denied Plaintiff's application initially on September 21, 2018, and again upon reconsideration on February 21, 2019. (R. 69-90). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Karen Sayon (the "ALJ") on December 4, 2019. (R. 29). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Gary Paul Wilhelm (the "VE"). (R. 31-68). On January 29, 2020, the ALJ found that Plaintiff's diabetes mellitus, chronic kidney disease, obesity, and COPD are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-17). After reviewing the evidence in detail, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform medium work with no concentrated exposure to respiratory irritants or hazards. (R. 17-21).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could not do Plaintiff's past work as a truck driver, but could perform a significant number of other jobs available in the national economy, including change house attendant, counter supply worker, and hand packager. (R. 21-22). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the October 1, 2017 alleged disability onset date through the date of the decision. (R. 22-23). The Appeals Council denied Plaintiff's request for review on September 15, 2020. (R. 1-5). That decision

2

stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, Plaintiff argues that the ALJ (1) erred in failing to consider whether he met Listing 6.06 for nephrotic syndrome; and (2) improperly ignored his testimony that he needs to elevate his leg. For reasons discussed in this opinion, the Court finds that the ALJ did not commit reversible error and her decision is supported by substantial evidence.

## DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is authorized by the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover SSI, a claimant must establish that he is disabled within the meaning of the Social Security Act. *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016). A claimant is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves considering whether: "(1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the

4

claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). *See also Melvin J. v. Kijakazi*, No. 20 C 3284, 2022 WL 2952819, at *2 (N.D. Ill. July 26, 2022) (citing 20 C.F.R. § 416.920(a)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Butler*, 4 F.4th at 501.

**C.     Analysis**

Plaintiff does not challenge most aspects of the ALJ's decision, including the identification of his severe and non-severe impairments, the determination that he has the RFC for medium level work, the evaluation of the opinion evidence, or the reliance on the VE's testimony. All of these arguments have been waived. *Underwood v. Saul*, 805 F. App'x 403, 406 (7th Cir. 2020) (arguments not raised before the district court are waived). The Court thus focuses on the two discrete issues raised in Plaintiff's briefs.

    **1.     Listing 6.06**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in failing to consider whether his chronic kidney disease ("CKD") meets or equals Listing 6.06 for nephrotic syndrome. "The Listings involve cases where the impairment(s) is so severe that there is no need to evaluate the limits of what a claimant can actually do; thus, if a claimant satisfies the requirements of a Listing, she is presumptively disabled and no further consideration is required." *Acera B. v. Saul*, No. 20 C 1674, 2021 WL 2222605, at *3 (N.D. Ill. June 2, 2021). Plaintiff "bears the burden of proving his condition meets or equals a listed impairment" and "must satisfy all of the criteria in [a] Listing in order to receive an award of disability insurance benefits." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Though

Plaintiff was represented by counsel throughout the administrative proceedings, he never asserted that he met or equaled any Listing, including ones related to his CKD. *See Migdalia M. v. Saul*, 414 F. Supp. 3d 1126, 1136-37 (N.D. Ill. 2019) (a claimant who is represented at the administrative hearing and thereafter "is presumed to have made her best case for benefits."). Nevertheless, the ALJ considered whether Plaintiff met or equaled Listing 6.05 for impairment of kidney function and determined that he did not satisfy the necessary criteria. (R. 17). Plaintiff does not dispute this finding.[2] *Underwood*, 805 F. App'x at 406.

Instead, Plaintiff newly argues that he satisfies the criteria for Listing 6.06, which requires:

> (A) Laboratory findings as described in 1 or 2, documented on at least two occasions at least 90 days apart during a consecutive 12–month period:
>
>> 1. Proteinuria of 10.0 g or greater per 24 hours; or
>>
>> 2. Serum albumin of 3.0 g/dL or less, and
>>
>>> a. Proteinuria of 3.5 g or greater per 24 hours; or
>>>
>>> b. Urine total-protein-to-creatinine ratio of 3.5 or greater; AND
>
> (B) Anasarca [general swelling or massive edema] . . . persisting for at least 90 days despite prescribed treatment.

*Paredes v. Comm'r of Soc. Sec.*, No. 16-CV-810-BCM, 2017 WL 2210865, at *13 (S.D.N.Y. May 19, 2017) (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1 § 6.06 (2015)). In making this argument, Plaintiff does not point to any physician of record who indicated that he meets or equals the requirements for Listing 6.06. Rather, Plaintiff claims that tests documenting his albumin levels and protein/creatinine ratios in May and

---

[2] The ALJ also considered Listing 3.02 for chronic respiratory disorders and Listing 9.00 for diabetes mellitus. (R. 16-17). Plaintiff raises no arguments as to these listings.

6

November 2019, together with evidence of anasarca "from 2017 to 2019," suffice to demonstrate listing-level nephrotic syndrome. (Doc. 13, at 11-12) (citing R. 286, 291, 335, 339, 342, 346, 407, 611, 621, 981, 1219, 2061, 2057, 2092). This Court disagrees.

First and foremost, the record contains opinions from state agency reviewers who uniformly concluded that Plaintiff does not have any listing-level impairments. On September 19, 2018, Judith Kelly, M.D., found that Plaintiff is not presumptively disabled and has an RFC for medium work. (R. 70, 74-75). James Madison, M.D., affirmed that assessment on December 13, 2018. (R. 84-87). Several months later on July 11, 2019, state agency reviewer Jose Rabelo, M.D., likewise opined that "no listing level is met or equaled." (R. 424). The ALJ found these uncontroverted opinions from Drs. Kelly, Madison, and Rabelo persuasive because they were consistent with the medical record. (R. 21). *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) ("The ALJ expressly relied upon the medical judgment of the state-agency consultants [in determining medical equivalence], and their uncontradicted opinions constitute substantial evidence.").

Plaintiff objects that it was improper for the ALJ to rely on the state agency opinions in this case because the physicians lacked access to records showing nephrotic syndrome "dated *after* the review physicians reviewed the record and formed their opinions." (Doc. 13, at 13) (emphasis in original). In Plaintiff's view, the ALJ committed reversible error by failing to consult a medical expert about the new evidence. (*Id.*). Courts have recognized that "[i]t is common for there to be a lag between the state agency physicians' reviews and the ALJ's decision, so the fact that new medical records came in after the state agency physicians conducted their reviews, is not, by itself, problematic."

7

*Shelia M. v. Saul*, No. 20 C 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021) (citing *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017)). "Rather, an outdated state agency problem occurs if there exists 'later evidence containing new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion.'" *Id.* (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)).

Here, Plaintiff does not identify any new diagnoses he received that could have changed the state agency reviewers' opinions. Diabetes specialist Erin Drever, M.D., diagnosed Plaintiff with uncontrolled diabetes at least by November 15, 2016 (R. 283), and she first noted evidence of proteinuria in February 2017. (R. 278). Nephrologist Michael Arvan, M.D., diagnosed Plaintiff with stage III CKD with severe nephrotic syndrome, proteinuria, and chronic alcohol abuse on June 1, 2017. (R. 291-92). All of the state agency physicians were able to review these records before concluding that Plaintiff does not meet or equal any listing. As noted, Plaintiff makes much of his albumin levels and protein/creatinine ratios, which he believes demonstrate listing-level impairment. Yet Dr. Rabelo had access to laboratory tests documenting these readings from September 2018 through May 2019. (R. 477, 479, 483, 485, 922, 962, 969, 986, 1030, 1057). This includes tests performed while Plaintiff was hospitalized from April 20 to May 17, 2019 for acute alcohol withdrawal following a 9-day drinking binge. (R. 769). None of these records changed Dr. Rabelo's assessment.

It is true that Dr. Rabelo could not have reviewed records and laboratory reports from November 4 to 7, 2019, when Plaintiff was hospitalized for an allergic reaction. (R. 2057). But Plaintiff fails to explain how the November 2019 treatment notes contained either new diagnoses or "entirely new symptoms" that were unknown to Dr. Rabelo.

8

*Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021). In such circumstances, the ALJ did not err in failing to submit the evidence to a medical consultant for review. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (a court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation."); *Sylvester W. v. Kijakazi*, No. 19 C 4263, 2022 WL 1591622, at *3 (N.D. Ill. May 19, 2022) (quoting *Nelms*, 553 F.3d at 1098) (any omission from the record "must be 'significant' – meaning, prejudicial – for the Court to determine that an ALJ abdicated his duty to develop the record.").

Another significant flaw in Plaintiff's listing argument is the lack of any evidence that he has experienced the necessary anasarca (swelling or massive edema) to satisfy the second requirement for nephrotic syndrome. Anasarca is "[a] generalized infiltration of edema fluid into subcutaneous connective tissue." *Rideout v. Berryhill*, 681 F. App'x 540, 542 n.3 (8th Cir. 2017) (quoting Stedman's Medical Dictionary 74 (28th ed. 2006)). Edema is "[a]n accumulation of an excessive amount of watery fluid in cells or intercellular tissues." *Id.* (quoting Stedman's at 612). Under Listing 6.06, the anasarca must persist for at least 90 days despite prescribed treatment.

The only time doctors documented "anasarca" was during Plaintiff's May 2019 hospitalization for alcohol withdrawal. (*See, e.g.*, R. 928, 1058, 1074, 1083, 1108, 1126, 1142, 1159, 1173, 1190, 1216). That lasted less than the required 90 days and corresponded with a drinking binge that went against Dr. Arvan's repeated instructions to abstain from alcohol use. (R. 19, 287, 292, 336, 340, 408). Plaintiff stresses that he presented with leg edema on several occasions between 2017 and 2019, ranging from +1 to +2-3. (Doc. 13, at 12) (citing R. 286, 291, 335, 339, 342, 346, 407, 611, 621). The

9

state agency reviewers had access to many such records, however, and neither they nor any other physician of record characterized the swelling as anasarca, or suggested it was sufficient to meet or equal Listing 6.06. Throughout that period, moreover, Plaintiff continued to use alcohol and admitted that he stopped taking prescribed medications such as insulin during his drinking binges. (R. 18, 19, 285, 291, 334, 619, 769, 2060).

Viewing the record as a whole, the ALJ did not commit reversible error in failing to consider whether Plaintiff meets or equals Listing 6.06 for nephrotic syndrome. Plaintiff's request to remand the case for further consideration of that issue is denied.

### 2. Need to Elevate Leg

Plaintiff next argues that the case must be reversed or remanded because the ALJ failed to consider his testimony that he needs to elevate his leg during the day to relieve swelling.[3] When it comes to a plaintiff's subjective statements, "[a]s long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Plaintiff never told any of his physicians that he needs to elevate his legs, and none of them suggested that he do so. *Compare Smith v. Astrue*, 467 F. App'x 507, 510-11 (7th Cir. 2012) (ALJ should have addressed the plaintiff's claimed need for leg elevation where hospital records included an instruction to keep the leg elevated following

---

[3] Plaintiff does not identify any other errors with respect to the ALJ's evaluation of his subjective symptoms. *Underwood*, 805 F. App'x at 406.

10

discharge). This alone supports the ALJ's decision not to include leg elevation in the RFC, a decision that is in no way "patently wrong." *See Anders v. Saul*, 860 F. App'x 428, 434 (7th Cir. 2021) (ALJ permissibly discounted the plaintiff's testimony about elevating his legs where "there is no record evidence from [the plaintiff's] treatment providers recommending that he elevate his legs at all, let alone at the frequency and duration that [the plaintiff] reported."). Moreover, no physician of record found Plaintiff more limited than the ALJ, or imposed any additional restrictions (regarding leg elevation or otherwise) not found in the RFC. *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ."). Plaintiff's general observation that some "medical sources have noted elevation is an appropriate home treatment for edema" (Doc. 13, at 14), in no way demonstrates that his doctors believed leg elevation is a necessary component of the RFC. *See Stewart v. Berryhill*, 731 F. App'x 509, 510 (7th Cir. 2018) ("Unsubstantiated claims are of course, no substitute for evidence.") (internal quotations omitted).

Viewing the record as a whole, the ALJ's failure to include leg elevation in Plaintiff's RFC is supported by substantial evidence. As the Supreme Court has noted, "[s]ubstantial evidence is not a high hurdle to clear – it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). The ALJ's decision satisfies this threshold and Plaintiff's request to remand the case for further consideration of his testimony regarding leg elevation is denied.

11

## **CONCLUSION**

For reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is denied, and Defendant's Motion for Summary Judgment [16] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: January 3, 2023

_____
SHEILA FINNEGAN
United States Magistrate Judge